**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| FAIRY WILLIAMS and GARY LITTLE, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> NEW JERSEY TRENTON PSYCHIATRIC : <br> HOSPITAL AND GREGORY LOVE, : <br> : <br> Defendants. : | Civil Action No. 04-06041(FLW) <br><br> **OPINION** |

**Wolfson**, **U.S.D.J.**:

      Plaintiffs, Fairy Williams ("Williams") and Gary Little ("Little") (collectively, "Plaintiffs"), unsuccessfully sought employment at Trenton Psychiatric Hospital ("TPH") for a single vacancy as the Food Service Supervisor. As a result, on December 10, 2004, Plaintiffs filed a Complaint against John Does[1], Gregory Love ("Love") and TPH, (collectively, "Defendants") alleging that Defendants' failure to select either Plaintiff for the Food Service Supervisor position was racially motivated in contravention of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD"). In addition, Plaintiffs also allege that Defendants discriminated against them based on their respective disabilities in violation of the NJLAD. Presently before the Court is the Motion for Summary Judgment filed by Defendants. For the reasons stated herein, the Court concludes that there is no genuine issue of material fact sufficient to withstand summary judgment. Accordingly, Plaintiffs' claims against Defendants are dismissed.

---

    [1]Plaintiffs have never substituted any defendants for these John Does, who remain unidentified, and consistent with this Opinion, will be dismissed.

**I. BACKGROUND**

TPH is a state hospital under the umbrella of the New Jersey Department of Human Services ("DHS"), a state agency. (Defendants' Statement of Undisputed Facts ("Def. Statements") at ¶ 2.) The position of Food Service Supervisor 1 is a civil service position, also know as a "title" within the competitive division of the career service, which is subject to the regulations of N.J.S.A. 11A and N.J.A.C. 4A. Job descriptions for civil service titles are provided by the New Jersey Department of Personnel ("DOP"). The DOP is responsible for outlining the duties and responsibilities of a Food Service Supervisor pursuant to the Administrative Code. Whenever the supervisor position is vacant, TPH must request names of eligible candidates from the DOP to fill the position and the candidates are ranked in accordance with the Administrative Code ("Certification List"). See N.J.A.C. 4A:4-4.1. However, TPH can also appoint provisional appointments to vacant positions within the competitive division of the career services. See N.J.A.C. 4A:4-1.5(a).

*Plaintiff Williams*

Pursuant to N.J.A.C. 4A:4-1.5(a), TPH hired Williams, on November 5, 2001, as a provisional employee for the position of Food Service Supervisor. At that time, by letter dated October 16, 2001, TPH explained to Williams that she was a provisional employee pending certification from the DOP's open competitive list. (Def. Statements at ¶ 15.) However, Williams disputes her provisional status. (Defendants' Brief in Support of their Motion for Summary Judgment ("Def. Br.") at 4.) In fact, Williams submits that she did not receive that letter until May 2003, two years after it was allegedly sent to her home. (Williams Aff. at ¶¶ 4-5.) Further, Williams wrote a letter on May 13, 2003, explaining to Manager of Human Resources John Lubitsky ("Lubitsky") that she had erroneously received a letter that congratulated her on her position as

2

"Clinical Nurse," and that she received the letter on May 12, 2003.  (See Williams Aff. Exhibit D.)[2]

In August 2002, the DOP announced an open competitive exam for the position of Food Service Supervisor at TPH, as mandated by the Administrative Code.  (Def. Br. at 5.)  Williams did not have to take the test.  (Plaintiffs' Statement of Undisputed Facts ("Plaintiffs' Statements") at ¶ 9.)  Instead, Williams was placed on the Certification List based upon her education and experience.  (Id.)  On December 19, 2002, the DOP ranked the candidates in the order of consideration.  (Def. Br. at 6.)  This Certification List ranked Plaintiff Little, a disabled veteran, number one, and Williams eighth.  (Def. Br. at 6.)  Even after the issuance of the List, Williams continued to assert that she was a permanent employee.

Despite Williams's assertion of permanent status, on August 12, 2003, Williams received a letter from TPH stating that on August 22, 2003, Williams' employment as a provisional Food Service Supervisor would terminate "due to the certification list issued against [her] by the Department of Personnel." (Williams Aff. at ¶ 18.)  After sending her that letter, on August 15, 2003, Williams went out on disability leave.  Nonetheless, her position was terminated during this leave.  (Plaintiffs' Statements at ¶ 45.)[3]  On August 28, 2003, Williams filed a grievance based on her

---

[2] Notwithstanding Defendants' assertion that Williams was a provisional employee, Williams contends that she was a permanent Food Service Supervisor because she had completed more than twelve months on the job as a provisional employee.  Williams further argues that she completed the required four-month working test period necessary to becoming a permanent employee, and that she was given a PAR (Performance Appraisal Review) evaluation only given to permanent employees.

[3] The Third Count of Plaintiffs' Complaint alleges that Defendants violated the NJLAD on the basis of her disability.  (Compl. at ¶¶ 24-25.)  Williams further alleges that Defendants knew she was recovering from breast cancer when she was hired.  (Compl. at ¶ 22.)  While out on sick leave, in accordance with a doctor's note, Williams' employment was terminated and her position was given to a non-disabled employee.  (Compl. at ¶ 22, 24.)  Furthermore, Little, a disabled veteran, was allegedly not hired as the Food Service Supervisor at TPH, in favor of a

termination. (Williams Aff. at ¶ 20.)

*Plaintiff Little*

Plaintiff Little was previously employed by the New Jersey Department of Corrections as an Institutional Trade Instructor. (Def. Br. at 7.) Little had the qualifications for the Food Service Supervisor position; although he did not have the requisite education, as a disabled veteran, he had the years of service equivalent. Little stated interest in the position of Food Service Supervisor and sought an interview. Although Defendants contend no formal job offer was made by anyone with proper authority, Little argues that he was told by Love that he had secured the position. (Defendants' Reply Brief in Response to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Def. Reply Br.") at ¶ 22.) This was evidenced, as Little suggested, by the fact that he was sent for fingerprinting, which he asserts is done only for a candidate who is offered a position. Ultimately, Little was informed by letter dated September 12, 2003, that he did not receive the Food Service Supervisor position. (Def. Br. at 10.)

Instead, the Food Service Supervisor position was given to Jane McNeill ("McNeill"). McNeil, who is Caucasian, responded to the posting for the position by indicating that she was interested in a lateral transfer or a reassignment. (Def. Br. at 8.) McNeill previously held the position of Food Service Supervisor at the North Jersey Developmental Center for fifteen years. (Def. Br. at 8.) McNeill's education consisted of a Bachelor of Science degree in Dietetics and a Master of Science degree. (Def. Br. at 8.) The North Jersey Developmental Center is structured within the same organization unit as the TPH, both of which fall under the ambit of the Department of Personnel. (Def. Br. at 10.) The Administrative Code allows an employee to laterally transfer to

---

non-disabled employee. ( Compl. at ¶ 24.)

4

another location within the same organizational unit. See N.J.A.C. 4A:4-7.2.

According to Defendants, since McNeil was a permanent employee within the organization, she was not on the Certification List provided by the Department of Personnel as a result of the open competitive test, and that she was covered by the Communication Workers of American ("CWA") collective bargaining agreement (the "Agreement"). Pursuant to the Agreement, a permanent employee must be given preference for a reassignment over other candidates. (See Lubitsky Aff. at ¶¶ 38-39.) Accordingly, TPH approved of McNeil's transfer, despite pending disciplinary charges against her. (Def. Br. at 9.) In fact, McNeill's transfer was approved by the North Jersey Developmental Center and received the required explicit authorization of the DOP. (Def. Br. at 10.)

As a result of Williams believing that she already had permanent employee status, and because Little was ranked number one and he believed that he could not be "bypassed," Plaintiffs argue that TPH and Love did not act in accordance with N.J.A.C. 4A:4-4.8(a)(3) in hiring McNeill. (Plaintiff's Statements at ¶¶ 4,7.) After obtaining their Right-to-Sue letter from the Equal Employment Opportunity Counsel on December 10, 2004, Plaintiffs filed their Complaints against Defendants on the basis of race and disability discrimination.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a

grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citations omitted).

**B. Title VII Standard**

To succeed on a claim of race discrimination, a claimant must establish that she was the subject of purposeful discrimination. Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d. Cir. 1990). Absent direct evidence, a plaintiff may prove intent through the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). To establish a prima facie case of discrimination, a plaintiff must show: (1) that she is a member of a protected group; (2) that she is qualified for the position; (3) that she was subject to an adverse employment action; and (4) that other similarly situated

individuals not in the protected group received better treatment. See Burdine, 450 U.S. at 254; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). By establishing a prima facie case of discrimination, a claimant creates a rebuttable presumption that an employer unlawfully discriminated against her.

An employer may dispel this inference by producing evidence of legitimate non-discriminatory reasons for its actions. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714, (1983). However, this burden does not involve a credibility assessment; thus, an employer needs only to articulate reasons and not to prove their validity. Reeves, 530 U.S. at 142-43. Once an employer meets this burden, a plaintiff has the opportunity to establish, by a preponderance of evidence, that the employer's proffered reasons are pretextual. Id.

"Pretext cannot be established based on speculation and mere conclusory allegations." Boykins v. Lucent Technologies, Inc., 78 F. Supp. 2d 402, 413 (2000). Thus, a plaintiff who has established a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d. Cir. 1994).

**1. Plaintiffs' Title VII Claim Against Love**

Defendants assert that Love should be dismissed from the case because there is no individual liability under Title VII. In order for an individual to be held liable under Title VII, he must be considered an employer. Mitchell v. New Jersey Lottery, No. 04-896, 2006 WL 1344092, at *7 (D.N.J. May 15, 2006); Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996), cert. denied, 521 U.S. 1129 (1997). An employer is defined as a "person engaged in an

industry affecting commerce who has fifteen or more employees and any agent of such a person."
42 U.S.C. § 2000e(b). There is no dispute that Love is not an employer as defined by Title VII.
Love was acting in his capacity as a business manager at TPH during the relevant times and he
clearly does not personally employ any employees. The Court finds that Love cannot be held
individually liable under the statute.[4] See Sheridan, 100 F.3d at 1077 (held that there is no individual
liability in Title VII cases, liability can only be found against the employer); see also Cortes v. Univ.
of Med. & Dentistry of N.J., 391 F.Supp.2d 298, 311 (D.N.J. 2005). Accordingly, Plaintiff's Title
VII claim against Love is dismissed.[5]

### 2. Plaintiff Williams' Title VII Claim Against Trenton Psychiatric Hospital

The New Jersey Administrative Code governed the employment decisions made by
Defendants. The Food Service Supervisor position at TPH is a civil service title, and personnel
decisions regarding civil service titles are mandated specifically by N.J.A.C. 4A and any applicable
collective bargaining agreement. See N.J.A.C. 4A:1-1.1 (stating "[t]he purpose of these rules is to
establish a personnel system that provides a fair balance between managerial needs and employee
protections for the effective delivery of public services consistent with Title 11A, New Jersey
Statutes"). The DOP reviews and approves all appointments, promotions, and related personnel
actions. See N.J.A.C. 4A:1-1.10.

When an employment opening exists "in the competitive division of the career service . . .
the appointing authority shall request a certification of names for regular appointment." N.J.A.C.

---

[4] The preclusion of individual liability does not apply to the claims made under NJLAD.

[5] In their Opposition to Defendants' Motion for Summary Judgment, Plaintiffs do not dispute Defendants' contention that Love cannot be held individually liable under Title VII.

4A:4-4.1. "Vacancies shall be filled by promotional examination unless the Commissioner determines that it is in the best interest of the career service to hold an open competitive examination." N.J.A.C. 4A:4-2.3. "Upon determining that there is a need for certification . . . the Department of Personnel shall issue or authorize the issuance of a certification to the appointing authority containing the names and addresses of the eligibles with the highest rankings on the appropriate list." N.J.A.C. 4A:4-4.2. The order of preference in the rankings is: (1) disabled veterans, (2) veterans, and (3) non-veterans. See N.J.A.C. 4A:5-2.1. Upon receipt of certification, an appointing authority shall "[a]ppoint one of the top three interested eligibles . . . from an open competitive or promotional list . . . ." N.J.A.C. 4A:4-4.8.

Williams fails to sufficiently establish that she has a prima facie case under Title VII. The parties do not dispute that Williams is a member of a protected class, that she was subject to adverse employment actions, and that McNeill, who is not member of a protected class, ultimately received employment. However, because Williams ranked eighth on the Certification List, she was not one of the three most qualified applicants; and since, under the Administrative Code, Williams would have to be ranked at the top three to be considered for the position, she fails to establish that she was qualified for the position, a necessary showing under a Title VII claim. Accordingly, the Court finds that these facts alone demonstrate that TPH had a legitimate reason for not offering the position of Food Service Supervisor to Williams. See N.J.A.C. 4A:4-4.8.

Alternatively, Williams contends that she was a permanent employee, rather than a provisional one.[6] The Court acknowledges that if Williams' status was permanent, the Food Service

---

[6] After Williams found out that "her position" was being posted, Williams initiated a meeting involving her union representatives and the administration to protest her provisional status. (Williams Aff. at ¶ 14.)

Supervisor position should never have been available for other candidates. Thus, the Court will make the determination of Williams' employment status.

Williams essentially articulates four reasons why she was a permanent employee: 1) she was informed during an interview that she would become permanent; 2) the pension deduction in her paycheck; 3) the fact that she was given an evaluation, referred to as a "PAR," and 4) that she served more than twelve months in her position[7]. The Court finds that none of Williams' asserted reasons demonstrate that she was a permanent employee. First, any conversation Williams may have had with the administration is alone insufficient to provide her with permanent status. Although Williams was told in her interview that she would eventually become a permanent employee, appointment of permanent status is governed by N.J.S.A. 11A:4-13. Thus, TPH would have to take specific steps before granting Williams permanent status. Without more, and since a mere promise does not satisfy the statutory requirements for permanent appointment, Williams' contention that she was promised a permanent position in her interview is without merit.

---

[7] It appears from Williams' submissions that she advances a fifth reason. Williams argues that because she completed a four-month working test period she is entitled to the position. In support of her argument she cites to N.J.S.A. 11A:4-13a, which states: "[r]egular appointments shall be to a title in the competitive division of the career service upon appointment. The appointments shall be permanent after satisfactory completion of a working test period . . . ." N.J.S.A. 11A:4-13a. Contrary to Williams' interpretation, the statute does not reference a four-month period. Further, Williams is not clear as to when she satisfactorily completed the working test period, nor does she provide any evidence that demonstrates satisfactory completion. Additionally, the CWA contract states: "[d]uring the normal probationary period of four (4) months, the employee will be informed of the standards of performance to be achieved and will be advised of the specific deficiencies in his progress, immediately in writing, at the end of the second and third months . . . ." Similar to the N.J.S.A., the CWA contract does not state that completion of a four-month working test period converts a provisional employee into a permanent one. Therefore, the Court rejects Williams' argument that she is entitled to a permanent status because she completed a four-month working test period.

Next, notwithstanding the pension deduction from her paycheck, Williams did not become a permanent employee. Williams argues that she requested in her employment form that she "did not want to be put into the pension system until such time as [she] was permanent," and thus, the pension deduction taken from her paycheck demonstrates that she was on permanent status. Williams' argument is flawed. (Williams Aff. at ¶ 3.) The form uses the specific language: "I wish to enroll as of my regular **or** permanent appointment date." (Williams Aff. at Exhibit A.) (emphasis added). Under the Administrative Code, Williams' regular employment began when she registered for the open competitive test and was subsequently certified by being placed on the Certification List. See N.J.A.C. 4A:1-1.3. When Williams' pension was taken out of her paycheck in December 2002, she was not a permanent employee, but had merely been given "regular employment" status. Thus, the pension deductions taken out from Williams' paycheck does not demonstrate that she was a permanent employee.

Similarly, Williams did not receive permanent status when she was given a PAR. According to the section of Williams employment contract addressing PARs, "[t]he State will maintain a performance assessment review system for all employees except those on trainee status . . . ." (Williams Aff. at Exhibit E.) Since Williams was not on trainee status, she appropriately received a PAR. Thus, Williams' non-trainee status also did not make her a permanent employee.

Finally, Williams' service of more than twelve months as a provisional employee did not make her permanent. Williams assert that under the statute, N.J.S.A. 11A:4-13.b, she was entitled to permanent status because she had worked as a Food Service Supervisor for more than twelve months. Indeed, Williams' assertion is a misinterpretation of the law. N.J.S.A. 11A:4-13.b states in relevant part that "[in] no case shall any provisional appointment exceed a period of 12 months."

11

N.J.S.A. 11A:4-13.b.  However, the statute does not state that by exceeding twelve months, a provisional employee automatically becomes permanent.  New Jersey case law supports this conclusion.  "[A] provisional employee is not vested with the right to retain a provisional appointment or to have that status converted into a permanent one simply by virtue of the [Department of Personnel's] failure to give a timely examination or take other action against such employee."  Melani v. County of Passaic, 345 N.J. Super. 579, 588 (App. Div. 2001) (citing O'Malley v. Department of Energy, 109 N.J. 309, 316 (1987)); Capibianco v. Civil Service Commission, 60 N.J. Super. 307, 319 (App. Div. 1960).  Accordingly, based on the foregoing reasons, the Court finds that Williams was a provisional employee, and she was appropriately subjected to the open competitive test and the subsequent ranking system pursuant to the Administrative Code.

Even assuming arguendo Williams was a permanent employee, she still cannot refute Defendants' non-discriminatory reasons for categorizing her as a provisional employee.  To succeed on a Title VII claim, Williams must demonstrate that Defendants made an employment decision based upon racial discrimination.  See Fuentes v. Peskie, 32 F.3d 759, 764 (3d. Cir. 1994).  In other words, Williams would have to show, by a preponderance of the evidence, that Defendants withheld her permanent status and subjected her to an open competitive examination motivated by racial discrimination.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

The Court finds that based on the factual record, at best, Defendants erred in their assessment of Williams' provisional status.  Believing they were acting in accordance with N.J.S.A. 11A:4-13, Defendants demonstrated that Williams was indeed hired as a provisional employee, (See Williams Aff. at ¶ 3), and the record shows that Defendants proceeded through the proper channel of an open

competitive examination to establish Williams' status as a permanent employee. Indeed, "[e]mployers are entitled to make employment decisions which are unpopular, unwise, and even unjust as long as they do not do so for discriminatory reasons." Walton v. Mental Health Association of Southeastern Pa., No. 96-5682, 1997 WL 717053, at *8 (E.D. Pa. 1997), aff'd 168 F.3d 661 (3d Cir. 1999). Other than Williams' conclusory assertions, Williams has not produced evidence to show that Defendants intentionally manipulated her employee status based on her race. Therefore, Williams did not satisfy her burden of establishing that Defendants' employment decisions were pretextual and, thus, fails to show a genuine issue of material fact sufficient to defeat summary judgment.

### 3. Plaintiff Little's Title VII Claim Against Trenton Psychiatric Hospital

Plaintiff Little, unlike Williams, can establish a prima facie case of race discrimination by showing that Little is a member of a protected class, he was qualified for the position of Food Service Supervisor since he was ranked first on the list, and McNeill, a similarly situated employee who is Caucasian, did in fact receive the position over Little. However, Plaintiff incorrectly suggests that Defendants' decision to transfer McNeil into the position in place of him was based on discrimination. Rather, Defendants based their decision to laterally transfer McNeill on a collective bargaining agreement, which instructed TPH that if a permanent employee has seniority for a position, that employee should be given preference for consideration of voluntary reassignment. (See Def. Br. at 22.) Therefore, the Court finds that Little has failed to refute Defendants' reason for not providing him with the Food Service Supervisor position.

The Court finds Mills instructive in this case. In Mills v. Philadelphia Gas Works, the defendant "proffered its reliance on the seniority system as a legitimate nondiscriminatory reason

13

for its actions . . . ." No. 06-2444, 2007 WL 2071881, at *5 (E.D. Pa.July 19, 2007). The plaintiff in that case had "proffered no evidence that any factor other than seniority played a role in his not having been promoted[,]" and relied on speculation instead. Id. Since the plaintiff in Mills could not provide a "factually grounded reason why [the defendant's] proffered nondiscriminatory reasons are credible[,]" the defendant's motion for summary judgment was appropriate. Id.

Furthermore, the Third Circuit has supported this conclusion. In Johnson v. Keebler-Sunshine Biscuits, Inc., 214 Fed. Appx. 239 (3d Cir. 2007), the plaintiff in a Title VII race discrimination claim was "bumped" from his employment position following substantial company lay-offs. Id. at 241. However, the defendant-employer "came forward with a legitimate reason for transferring [the plaintiff] from the position." Id. at 242. "Indeed, the Collective Bargaining Agreement between [the plaintiff's] union and [the defendant] provides that in the event of a layoff, an employee may "bump" another employee out of a position as long as she has greater seniority and has the ability to perform the work." Id. at 242-43. Though the Third Circuit ultimately held that a prima facie case was established, the plaintiff failed to demonstrate a genuine issue of material fact that the defendant's legitimate, non-discriminatory reasons for the "bump" were pretextual. Id. at 243.

Similarly, here, Little did not put forth evidence that refutes Defendants' asserted legitimate reasons for transferring McNeill under the collective bargaining agreement. Little asserts that the only reason why McNeill was chosen over him for the Food Service Supervisor position was because of his race. On the other hand, Defendants submit that the decision to transfer McNeill was based on a collective bargaining agreement, which gives preference to employees who are permanent and have seniority for a position. By utilizing the powers granted to TPH by N.J.A.C. 4A:4-7.2, which

14

states that "[r]eassignments shall be made at the discretion of the head of the organizational unit," TPH exercised its administrative discretion to transfer McNeill to the Food Service Supervisor position. Little does not refute Defendant's legitimate reason based on the collective bargaining agreement. Moreover, Little's contention that because he ranked number one on the Certification List he cannot be "bypassed" is without merit. Little does not cite to any applicable law that mandates TPH must fill the Food Service Supervisor position from an applicant on the Certification List, nor does Little even suggests one exists. (See Lubitsky Aff. at ¶ 42.) Even less compelling is Little's contention that because he was sent for fingerprinting, he was offered the position. Without any applicable legal authority, the Court finds that contention conclusory and, thus, equally without merit. Accordingly, Defendants have established legitimate, non-discriminatory reasons for transferring McNeill, rather than appointing Little to the position. In light of that and since "[a] plaintiff cannot avoid summary judgment 'simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations[,]'" Little has not met his burden of demonstrating that Defendants' reasons were pretextual. Mills, 2007 WL 2071881 at *5 (quoting Fuentes, 32 F.3d at 764). Accordingly, summary judgment is also appropriate on this claim.[8]

---

[8] Plaintiff Little further argues that McNeil was on disciplinary charges and so she could not have been qualified for the position. Thus, Little argues that Defendants' decision to transfer McNeil in place of him was racially motivated. The Court finds Little's argument conclusory and unpersuasive. McNeill's disciplinary charges were a result of neglect of duty that could result in danger to property. (Def. Br. at 9.) McNeill's assistant was charged with theft of money and McNeill was being held responsible as the supervisor. (Def. Br. at 9.) McNeill's appeal had not been concluded by the time she requested the lateral transfer. (Def. Br. at 9.) The penalty given to McNeill did not occur until after she was given the Food Service Supervisor position. (Plaintiffs' statements at ¶37.) Plaintiffs argue that because McNeill was the subject of disciplinary proceedings, she should never have been considered for the position of Food Service Supervisor at TPH. (Plaintiffs' Statements at ¶ 37.) However, the Plaintiffs failed to cite to any applicable law that prohibits an agency from allowing an employee to transfer because disciplinary charges are pending. In fact, as discussed above, the decision to transfer McNeill

**C. Plaintiffs' New Jersey Law Against Discrimination Claims**

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officials in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Absent an explicit waiver of Eleventh Amendment immunity, a state may not be sued in the federal courts. Edelman, 415 U.S. at 673. Indeed, the text of NJLAD does not contain language that conveys a waiving of the State's Eleventh Amendment immunity in Federal Court. See Rudolph v. Adamar of New Jersey, 153 F. Supp. 2d 528, 542 (D.N.J. 2001). Moreover, Eleventh Amendment immunity extends to litigation against departments or agencies of the State. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).

Here, since TPH is a hospital operated by the State through its Department of Human Services, the Eleventh Amendment immunity applies, and Plaintiffs' NJLAD claims against it must be dismissed. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Likewise, Love is a state official acting in his official capacity in the instant case, and is therefore

---

was based upon a collective bargaining agreement. Therefore, the Court rejects this argument.

protected from suit in federal court under a NJLAD claim.[9] See <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted, and Plaintiffs' Complaint as to TPH and Love is dismissed. An appropriate Order shall follow.

Dated: September 28, 2007

                                                       /s/Freda L. Wolfson
                                                      Freda L. Wolfson, U.S.D.J.

---

[9] Plaintiffs did not refute Defendants' claim of Eleventh Amendment immunity from the NJLAD claims.